## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEMS PLLC, | ) | 3:21-CV-01169 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARVARD PILGRIM HEALTH CARE | ) | |
| OF CONNECTICUT INC n/k/a | ) | July 20, 2022 |
| HARVARD PILGRIM HEALTH CARE | ) | |
| INC. | ) | |
| *Defendants*. | ) | |

### DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

NEMS PLLC[1] ("Plaintiff") brings the present action against Harvard Pilgrim Health Care of Connecticut Inc. n/k/a Harvard Pilgrim Health Care Inc., ("Defendant") alleging, primarily, violations of the Connecticut Unfair Insurance Practices Act ("CUIPA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and the Connecticut Surprise Billing Law. Plaintiff also seeks a declaratory judgment. In short, Plaintiff alleges that Defendant has failed to properly pay Plaintiff for emergency medical services that Plaintiff's physicians performed for hospital patients.

Presently before the Court is Defendant's motion to dismiss Plaintiff's amended complaint.[2] Defendant argues that Plaintiff has no private cause of action under the Surprise Billing law and no standing to bring a claim under CUIPA/CUTPA. Defendant further argues that,

---

[1] This action has been consolidated with *Northeast Emergency Medicine Specialists, LLC v. Harvard Pilgrim Health Care of Connecticut, Inc. et al.*, 3:21-cv-01172-SVN, for all purposes. *See* ECF No. 23. For ease of reference, the Court will refer to NEMS PLLC as "Plaintiff" throughout this ruling; however, it understands that the pending motion to dismiss relates to the claims in both actions.

[2] Following oral argument on the instant motion, the Court permitted Plaintiff to file an amended complaint to remove former defendant Health Plan Holdings, Inc., and to correct the corporate name of Defendant. ECF No. 44. In that order, the Court made clear that such changes would not impact Defendant's motion to dismiss. The Court will treat Defendant's motion to dismiss as directed to what Plaintiff labeled the "Second Amended Complaint," filed at ECF No. 45, the substantive allegations of which do not differ from Plaintiff's original complaint.

in any event, Plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons that follow, the Court GRANTS IN PART Defendant's motion to dismiss.

## I.      FACTUAL BACKGROUND

The present dispute arises from Defendant's purported failure to abide by Conn. Gen. Stat. § 38a-477aa (the "Surprise Billing Law").  In order to appreciate and understand the Surprise Billing Law and Defendant's purported failure to abide by it, some background on the manner in which emergency medical providers are paid for provision of emergency medical services is necessary.

The following facts from the Second Amended Complaint ("SAC") are accepted as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Generally, physicians or groups of physicians will enter agreements with insurers that "specify the amount the insurer is supposed to pay" the physician for a given treatment or service.  ECF No. 45 ¶ 10. Where a physician has entered such an agreement with a given insurance provider and provides medical services to a patient that is insured by the same insurance provider, the physician is considered "in-network."  *Id*. ¶ 11.  Where, however, a patient is treated by a physician that does not have such an agreement with the patient's insurer, that physician is considered "out of network."  *Id.*  Whether a physician is in-network or out-of-network for a given patient can significantly increase or decrease the cost the insured is required to bear.  Importantly, Plaintiff, an LLC that employs emergency medicine physicians and supplies them to hospital emergency departments, *see id.* ¶ 1, has not entered an agreement with Defendant in this case.  *Id*. ¶ 12.  Thus, any medical services rendered to Defendant's insureds by Plaintiff's physicians are considered out-of-network.

When a patient comes to a hospital's emergency department, if they are not in need of immediate medical care, they are registered by the hospital, evaluated by a nurse, and then treated by a doctor.  ECF No. 45 ¶ 18.  If the patient needs more immediate care, they are treated by a doctor first and then registered by the hospital.  *Id.*  In the course of being registered by the hospital, the patient's insurance information is entered into an electronic database from which it can be referenced later.  *Id.* ¶ 19.  A patient may receive a much higher bill for medical services if he or she is treated by an out-of-network physician at a hospital.

In the past, a patient would assign her insurance benefits to the out-of-network treating physician, and the physician would seek compensation directly from the insurance provider.  *Id.* ¶ 23.  Changes to provisions in insurance policies—specifically, the inclusion of anti-assignment provisions—have prevented patients from continuing to assign their benefits to treating physicians.  *Id.* ¶ 21, 23-24.  In recognition of the nature of emergency medical services, and the fact that patients are no longer able to assign benefits to their treating physicians to seek payment, Connecticut passed the Surprise Billing Law.  *Id.* ¶¶ 8, 25.

The Surprise Billing Law enacted by the Connecticut Legislature in 2015 was intended "to ensure that emergency physicians are paid for out-of-network services at a specified rate and to protect patients from costs that exceed what they would pay if the patient was treated at an in-network emergency department."  *Id.* ¶ 28.  The law  provides that "[n]o health carrier shall impose, for emergency services rendered to an insured by an out-of-network health care provider, a coinsurance, copayment, deductible or other out-of-pocket expense that is greater than the coinsurance, copayment, deductible or other out-of-pocket expense that would be imposed if such emergency services were rendered by an in-network health care provider."  *Id.* ¶ 29.  The Surprise Billing Law further mandates that insurance providers reimburse out-of-network emergency

medical providers for services rendered at the greater of the following rates: (i) the in-network fee; (ii) the usual, customary and reasonable rate as set forth in a database called the FAIR Health database or; (iii) the Medicare rate. *Id.* ¶ 8. Of these three options, the FAIR Health database rate is almost always the highest. *Id.* ¶ 27. An example from the SAC illustrates the payment structure. Assume a hypothetical patient receives treatment by an out-of-network emergency department provider. *Id.* ¶ 30. The in-network rate for this care is $200, the FAIR Health database rate is $250, and the patient has a $500 deductible. *Id.* The patient would owe $200 because that is the in-network rate and does not exceed her deductible. *Id.* The patient's insurer would owe the emergency physician the remaining $50 of the $250 FAIR Health database rate, because the physician is entitled to payment of the higher FAIR Health database rate, rather than the $200 in-network rate. *Id.*

With this background in mind, we arrive at the facts pertaining to this case. Plaintiff's doctors provided emergency medical services to patients that were insured by Defendant. *Id.* ¶ 31. After the services were rendered, Plaintiff billed Defendant for those services. *Id.* These bills were accepted by Defendant as legitimate services performed by Plaintiff's doctors and properly billed. *Id.* ¶ 33. However, Defendant refused to pay to Plaintiff the difference between the in-network rate and the FAIR Health database rate. *Id.* ¶ 34. Instead, Defendant has passed on these costs to patients, as amounts owed by the individual insureds. *Id.*

Plaintiff alleges that Defendant's actions have effectively prevented it from recovering the amounts owed because healthcare providers are prohibited by statute from requesting the additional payment from the patient. Specifically, Connecticut law provides that "[i]t shall be an unfair trade practice in violation of chapter 735a for any health care provider to request payment from an enrollee, other than a coinsurance, copayment, deductible or other out-of-pocket expense,

for . . . (2) emergency services covered under a health care plan and rendered by an out-of-network health care provider, or (3) a surprise bill, as defined in section 38a-477aa." Conn. Gen. Stat. § 20-f(b); ECF No. 45 ¶ 39. Due to this statute, Plaintiff has not, and cannot, seek to recover the outstanding amounts due from the patients themselves. ECF No. 45 ¶¶ 40–42. Thus, Plaintiff brings the present action seeking to recover the amounts owed from Defendant.

## II.    LEGAL STANDARD

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id*.

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id*., and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing Twombly, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

In its motion to dismiss, Defendant raises four separate arguments purportedly entitling it to dismissal of the SAC.  Specifically, Defendant argues: (i) the Surprise Billing Law does not provide Plaintiff with a private right of action; (ii) Plaintiff does not have standing under CUIPA/CUTPA; (iii) the claims are preempted by ERISA; and (iv) with no substantive claims remaining, the Plaintiff's claim for declaratory judgment must fail.  The Court will address each contention in turn below.  In summary, the Court agrees with Defendant that the Surprise Billing Law does not provide Plaintiff with a private cause of action but agrees with Plaintiff that it has standing to pursue some claims under CUIPA/CUTPA, that its claims are not preempted by ERISA, and that its declaratory judgment claim survives because other claims have survived.

### A.   The Surprise Billing Law Does Not Provide a Private Right of Action

The question of "whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979).  Neither the Connecticut Supreme Court nor, to this Court's knowledge, any lower Connecticut state court, has had occasion to consider whether the Surprise Billing Law creates a private cause of action.  Where state law is "uncertain or ambiguous the job of the federal courts is carefully to predict how the highest court of the state . . . would resolve the uncertainty or ambiguity." *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir. 1998) (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)).  It is thus this Court's job to predict how the Connecticut Supreme Court would rule on the issue.  Plaintiff does not argue that the Surprise Billing Law contains an express cause of action

that would allow the present suit. Therefore, the Court will determine only whether an implied cause of action exists.

In Connecticut, it is a "well settled fundamental premise that there exists a presumption . . . that private enforcement does not exist unless expressly provided in a statute. In order to overcome that presumption, the plaintiff bears the burden of demonstrating that such an action is created implicitly in the statute." *Provencher v. Town of Enfield*, 936 A.2d 625, 629 (Conn. 2007). In determining whether an implied cause of action exists, the Court examines: first, whether the plaintiff is one of the class for whose benefit the statute was enacted; second, whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and, third, whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. *Napoletano v. CIGNA Healthcare of Conn., Inc*., 680 A.2d 127, 145 (Conn. 1996), *overruled on other grounds by Batte-Holmgren v. Comm'r of Pub. Health,* 914 A.2d 996 (Conn. 2007). Importantly, however, in light of Conn. Gen. Stat. § 1-2z, Connecticut courts "do not go beyond the text of the statute and its relationship to other statutes unless there is some textual evidence that the legislature intended, but failed to provide expressly, a private right of action." *Provencher*, 936 A.2d at 629. Such evidence could take the form of "language granting rights to a discrete class without providing an express remedy or language providing a specific remedy to a class without expressly delineating the contours of the right." *Id.*

While the *Napoletano* factors "all overlap to some extent" and "each is not necessarily entitled to equal weight," the plaintiff must initially meet the threshold requirement that "none of the three factors weighs against recognizing a private cause of action." *Asylum Hill Problem Solving Revitalization Ass'n v. King*, 890 A.2d 522, 528 (Conn. 2006). If the plaintiff can show none of the factors weigh against their position, the court can then turn to the ultimate question of

"whether there is sufficient evidence that the legislature intended to authorize these plaintiffs to bring a private cause of action despite having failed expressly to provide for one." *Id.*

In determining whether a statute gives rise to an implied cause of action, the Court employs the basic principles of statutory interpretation. *See Eder Bros. v. Wine Merchants of Conn., Inc.*, 880 A.2d 138, 145 (Conn. 2005). Thus, under Conn. Gen. Stat. § 1-2z, the Court will look exclusively to the text of a statute as long as the text is "plain and unambiguous and does not yield absurd or unworkable results. *Gilmore v. Pawn King, Inc.*, 98 A.3d 808, 812 (Conn. 2014); Conn. Gen. Stat. § 1-2z. Further, "it is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions.... [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning ... [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." *Lopa v. Brinker Int'l, Inc.*, 994 A.2d 1265, 1269 (Conn. 2010).

### 1. *Plaintiff is One of the Class for Whom This Statute Was Enacted*

The first *Napoletano* factor the Court must consider is whether Plaintiff is one of the class for whose benefit the statute was enacted. Defendant posits two separate arguments why Plaintiff is not part of the class the Surprise Billing Law was intended to protect. Initially, Defendant argues the definition of health care provider in the statute expressly excludes Plaintiff. Even if that were not the case, however, Defendant argues the statute was enacted to protect patients from receiving excessively large medical bills after seeking emergency medical care, rather than to ensure that doctors are appropriately compensated. Both arguments are unconvincing.

Defendant's argument that Plaintiff is expressly not covered by the statute's definition of health care provider fails because it would lead to an absurd result. It is true that the Surprise

Billing law defines health care provider as "an individual licensed to provide health care services." Con. Gen. Stat. § 38a-477aa. It is also true that Plaintiff in the present action is not an individual; rather, it is an LLC that employs doctors who provide health care services to patients. However, the Connecticut Supreme Court has "often recognized that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results." *Shortell v. Cavanagh*, 15 A.3d 1042, 1045 (Conn. 2011). Thus, the Connecticut Supreme Court consistently interprets statutes to prevent absurd and unworkable results. *See Lyon v. Jones,* 968 A.2d 416, 428 (Conn. 2009). This Court will do the same.

The reading encouraged by Defendant would lead to just such absurd and unworkable results. As a practical matter, most physicians practice as part of an LLC or some other corporate entity. This is particularly true of emergency room physicians. If the statute required each doctor to individually bill the insurance provider, and then work out whether that doctor will be paid individually for each patient, the statute would simply collect dust in a statute book, as it would be practically unusable by doctors. This is clearly a bizarre result. Interpreting the statute to allow corporate entities, such as Plaintiff, to bring suit on behalf of the health care providers they employ is more in line with the aims of the statute. Plaintiff has attempted to recover sums due to it, on behalf of the providers, for numerous outstanding bills. The statute is functioning correctly by allowing Plaintiff to potentially pursue recovery for amounts owed to it for its physicians' services.[3]

Defendant's second argument on this factor, that the Surprise Billing Law was not intended to benefit physicians, fares no better. While it is true the Surprise Billing Law was primarily enacted to ensure patients were not saddled with large medical bills from out-of-network providers,

---

[3] Plaintiff has stated that if the Court requires it, Plaintiff will add each individual physician as a plaintiff to the present action. Based on the Court's interpretation of the statute, this will not be necessary.

its express language also provides health care providers a mechanism for reimbursement from the insurance companies.  The reimbursement clauses clearly benefit the physicians, who otherwise cannot seek reimbursement from the patients due to the anti-assignment provisions of the insurance policies.  Further, the Legislature could have written the statute to simply preclude the hospital from charging the patient out-of-network rates, without mandating that the insurance company reimburse the health care providers for these patients.  The Legislature did not do this.  Instead, the Legislature chose to require the insurance company to reimburse the out-of-network doctors. Such a benefit counsels in favor of finding Plaintiff to be a part of the benefited class.  *See Provencher*, 936 A.2d at 631.

Defendant's argument suggests that just because doctors can work out repayment with the insurance providers does not mean that the doctors are intended beneficiaries of the law.  But that cannot be so.   To hold that the statute was not intended to benefit healthcare providers would essentially require the Court to ignore the entire fee-shifting clause of the law.  This runs contrary to the established principle that Connecticut courts give effect, "if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws."  *Broadnax v. City of New Haven*, 851 A.2d 1113, 1132 (Conn. 2004).  Instead, it is a far more plausible reading of the statute to hold that the legislature intended to protect healthcare providers, as well as patients, when passing the Surprise Billing Law.  Thus, Plaintiff is part of the class intended to benefit from the statute.

2. *There is No Indication the Legislature Intended to Create a Private Right of Action*

In analyzing the second *Napoletano* factor, whether the legislature intended to create a private right of action, the Court looks to "the text of [that statute] and its relationship to the broader statutory scheme."  *Gerardi v. City of Bridgeport*, 985 A.2d 328, 334 (Conn. 2010).

The Surprise Billing Law is part of Connecticut General Statutes Title 38a, entitled "Insurance."  As the name might suggest, this title lays out Connecticut's legislative scheme regulating insurance.  The Surprise Billing Law has no express private right of action in the text of the statute.  In looking to the broader statutory scheme, however, it is clear that this was not an oversight.  Where the Legislature thought it appropriate, it included private causes of action elsewhere in Title 38a.  *See* Conn. Gen. Stat. § 38a-470(f) (creating private cause of action for carriers, employers, and employees to contest workers' compensation liens); Conn. Gen. Stat. § 38a-479ff (creating cause of action for enrollees, providers, and employees where carrier takes adverse action for filing a complaint with the Insurance Commissioner or the Office of the Healthcare Advocate).  If the legislature had wanted a similar clause in the Surprise Billing Law, "it easily could have added language to [the statute to] indicate that such an action was authorized and intended."  *Gerardi*, 985 A.2d at 334–335.  That the Legislature chose to include such language in other insurance-related statutes, but not the Surprise Billing Law, is a strong indication that the Legislature did not intend to create an implied private cause of action here.  *See id.*;  *Provencher*, 936 A.2d at 634 (reasoning that, where the legislature expressly provided a right of action for other provisions in a given title, but not the provision at issue, it is a strong indication the legislature did not intend to create such a cause of action); *Eder Bros.*, 880 A.2d at 145 (same); *Asylum Hill*, 890 A.2d at 533 (same).

As Plaintiff has not made a showing that the Legislature intended to create a private right of action, Plaintiff does not satisfy the second *Napoletano* factor.  Because Plaintiff has failed to show that "none of the three factors weighs against recognizing a private cause of action," the Court need go no further in its analysis.  *Asylum Hill*, 890 A.2d at 528.  Nevertheless, for purposes of completeness, the Court addresses the third factor below.

3.     *The Purpose of the Statutory Scheme Does Not Support a Private Right of Action*

When examining the final *Napoletano* factor, concerning the purpose of the statutory scheme, "the relation of a statutory provision to other statutes is an important guide to the meaning" of the statute.  *Asylum Hill*, 890 A.2d at 532.  Accordingly, the Court must examine the statutory scheme regulating insurance in its entirety and how the Surprise Billing Law accomplishes the goals of this scheme.  *Provencher*, 936 A.2d at 634.

First, even without a private cause of action, Title 38a provides an enforcement mechanism. Specifically, "the commissioner shall see that all laws respecting insurance companies and health care centers are faithfully executed and shall administer and enforce the provisions of this title." Conn. Gen. Stat. § 38a-8(a).  Having granted the Insurance Commissioner the ability to enforce Title 38a, the Legislature ensured that even without a private right of action, the Surprise Billing Law was not without "practical effect."  *See Noffsinger v. SSC Niantic Operating Co. LLC,* 273 F. Supp. 3d 326, 340 (D. Conn. 2017).  This enforcement mechanism counsels strongly against implying a private cause of action.  *See Perez-Dickson v. City of Bridgeport*, 43 A.3d 69, 89 (Conn. 2012) (no private cause of action where the statutory scheme at issue authorized the Attorney General to enforce statute); *Gerardi*, 985 A.2d at 334 (no private cause of action where the statutory scheme at issue authorized the Labor Commissioner to enforce the statute).

The enforcement powers granted to the Insurance Commissioner, along with the Legislature's provision of express private causes of action in other circumstances, makes the present case quite similar to the situation confronted by the Connecticut Supreme Court in the *Eder Brothers* case.  In *Eder Brothers*, the plaintiff alleged that two sections of the Liquor Control Act, Conn. Gen. Stats. §§ 30-64a and 30-94a, created an implied private right of action.  *Eder Bros*, 880 A.2d at 145.  There, a separate section of the Liquor Control Act expressly provided a private

right of action. *Id. See also* Conn. Gen. Stat. § 30-102. The Liquor Control Act further provided that the Department of Consumer Affairs was empowered to enforce the Act under a statutory provision similar to that empowering the Insurance Commissioner to enforce Title 38a. *Id.* *Compare* Conn. Gen. Stat. § 30-6(a) *with* Conn. Gen. Stat. § 38a-8(a). With these facts in mind, the Connecticut Supreme Court concluded that the Legislature intended the Department of Consumer Affairs to have sole authority to enforce the statute except as otherwise stated and that, "absent express language authorizing a private right of action," the court would not imply one. *Eder Bros.*, 880 A.2d at 146-148.

The case now before the Court has nearly identical facts, and thus an identical outcome. The state Legislature was aware that it could provide a private right of action to health care providers to enforce the Surprise Billing Law. The Legislature decided instead to vest sole enforcement authority with the Insurance Commissioner. It is clear that there is no implied right of action under the Surprise Billing Law. Therefore, Plaintiff's claims brought under the Surprise Billing Law must be DISMISSED.

### B. Plaintiff May Pursue CUTPA and Certain CUIPA through CUTPA Claims

In addition to its claims under the Surprise Billing Law, Plaintiff alleges that Defendant violated CUTPA, Conn. Gen. Stat. § 42-118a *et seq.* These claims arise under two separate theories. Initially, Plaintiff claims that Defendant's failure to comply with the Surprise Billing Law is itself an unfair trade practice and thus a violation of CUTPA. ECF No. 45 ¶ 49. Defendant believes that Plaintiff cannot maintain an independent CUTPA action for violations of the Surprise Billing Law. Plaintiff further alleges that Defendant's conduct constitutes unfair insurance

practices and is a violation of CUIPA, which it seeks to enforce via CUTPA.[4]   Specifically,

Plaintiff alleges that Defendant has violated numerous sections of CUIPA, specifically: Conn. Gen.

Stat. § 38a-816(6)(A) (relating to misrepresenting pertinent facts or insurance policy provisions

relating to coverages at issue), (B) (relating to failing to acknowledge and act with reasonable

promptness upon communications with respect to claims arising under insurance policies), (C)

(relating to failing to adopt and implement reasonable standards for the prompt investigation of

claims arising under insurance policies), (D) (relating to refusing to pay claims without conducting

a reasonable investigation based upon all available information), (F) (relating to not attempting in

good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has

become reasonably clear), and (G) (relating to compelling insureds to institute litigation to recover

amounts due under an insurance policy by offering substantially less than the amounts ultimately

recovered in actions brought by such insureds), as well as § 38-816(15) (relating to failure by an

insurer or any other entity responsible for providing payment to a health care provider pursuant to

an insurance policy to pay accident and health claims within certain time frames, subject to

exceptions) and (23) (relating to violations of internal procedures for benefits review and

grievances) (collectively, the "CUIPA through CUTPA Claims").   Defendant contends that each

of these claims must be dismissed because, as a non-party to the insurance policies at issue,

Plaintiff does not have standing to assert the CUIPA through CUTPA Claims.   The Court will

address both contentions below.

---

[4] Because CUIPA does not contain a private cause of action, the Connecticut Supreme Court has held that the appropriate method for a plaintiff to enforce his or her rights under CUIPA is an action alleging CUIPA violations brought under the private right of action established by CUTPA.  *See Mead v. Burns*, 509 A.2d 11, 19 (Conn. 1986).

   1. *Plaintiff Can Maintain a CUTPA Claim Under the Surprise Billing*
   *Law*

Turning first to whether Plaintiff is empowered to sue for an insurance-related CUTPA

claim independent of CUIPA, the parties agree that Connecticut's seminal case on this topic is

*State v. Acordia, Inc*., 73 A.3d 711, 732 (Conn. 2013).  In *Acordia*, the Connecticut Supreme Court

confronted the question of whether a common law claim, specifically an alleged breach of

fiduciary duty by an insurance broker, could form the basis of a CUIPA violation.  *Id.* at 720.  The

Court also addressed whether a CUTPA claim could survive if the underlying CUIPA claim on

which the CUTPA claim was based did not.  *Id.* at 720.

On the first issue, the court noted that CUIPA provides an itemized list of insurance

practices that are prohibited.  *Id.* at 723.  Where a statute contains such a list, the Legislature is

presumed to have intended that list to be exclusive, unless there is evidence to the contrary.  *Id.* at

724.  The court then noted, however, that CUIPA does not expressly provide that the list is

exclusive, and that Conn. Gen. Stat. § 38a-815 allows the Insurance Commissioner to determine

that "a particular practice constitutes an unfair insurance practice in violation of CUIPA."  *Id.*

Nevertheless, the court reasoned that, "because there is no statutory basis for concluding that

breach of fiduciary duty constitutes a violation of CUIPA, . . . the trial court improperly

incorporated this common-law concept into its CUIPA analysis."  *Id.* at 726.  Because the CUIPA

claim based on the alleged breach of fiduciary duty failed, the accompanying CUTPA claim failed

as well.  *Id.* at 729.

While *Acordia* definitively foreclosed a CUTPA action for insurance-related conduct based

on a common law right, the decision reserved the possibility that a CUTPA action for insurance-

related conduct could be based on either a violation of CUIPA or, "arguably, some other statute

regulating a specific type of insurance related conduct." *Id.* at 732.  Since the *Acordia* decision,

however, the Connecticut Supreme Court has not expounded further directly on whether or when a CUTPA action can be brought pursuant to another "statute regulating a specific type of insurance related conduct." *Id.* As noted above, this Court must thus predict how the Connecticut Supreme Court would rule on this issue. *First Invs. Corp.*, 152 F.3d at 165.

The closest the Connecticut Supreme Court has come was *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 119 A.3d 1139 (Conn. 2015). There, the plaintiffs brought a class action, claiming that an insurer violated CUTPA by requiring its appraisers to use hourly labor rates agreed upon by the insurer and the auto body shop, rather than rates that more accurately reflected the value of the labor, when appraising auto body damage sustained by insureds. This alleged conduct did not violate any specified CUIPA provisions, but allegedly violated Conn. Gen. Stat. § 38a-790-8, pertaining to appraisers evaluating damaged property fairly and impartially. *Id* at 1151. In *Artie's*, the court held that "although § 38a-790-8 reasonably may be characterized as regulating insurance related conduct insofar as it prescribes a standard of conduct for appraisers who estimate the cost to insurers of auto body repairs, that provision did not regulate the conduct at issue because the labor rate an auto body shop would be paid was the subject of negotiation between the insurer and the shop, and did not run afoul of the ethical duties of appraisers set forth in the statute. *Id.* at 1151–52. The implication of the Connecticut Supreme Court's language in *Artie's* is that, had the statute regulated the conduct at issue, the Connecticut Supreme Court would have allowed the CUTPA claim to proceed under *Acordia*'s holding that a "statute regulating a specific type of insurance related conduct" could give rise to a CUTPA claim, even if the conduct does not also violate CUIPA. Similarly, in *Alqamus v. Pac. Specialty Ins. Co.*, No. 3:14-CV-00550 (VAB), 2015 WL 5722722, at *3 (D. Conn. Sept. 29, 2015), another court in this district noted that "a CUTPA claim against an insurer arguably could be predicated" upon a violation of certain state

statutes that prescribed the requirements for fire insurance contracts.  Ultimately, the complaint in *Alqamus* contained only vague and conclusory allegations that did not state a claim under the federal pleading standard, though, so the case was dismissed.  *Id.*

In considering the guidance available to it, therefore, the Court believes that, in the appropriate case, a plaintiff can maintain a CUTPA action, independent of CUIPA, where there is an alleged violation of a "statute regulating a specific type of insurance related conduct." *Acordia*, 73 A.3d at 27.  It is further apparent that the present case is just such a situation.

The Surprise Billing Law unquestionably regulates insurance-related conduct.   It specifically requires insurers to take certain actions with regard to emergency medical services. Further, it cannot be argued that the conduct alleged in the present case is not the type regulated by the statute.  Specifically, Plaintiff alleges that Defendant directly failed to comply with the Surprise Billing Law.  Thus, the Plaintiff's CUTPA claim that Defendant's actions violated the Surprise Billing Law will proceed.

### 2. Plaintiff Adequately Alleges CUIPA through CUTPA Claims Under Conn. Gen. Stat. § 38a-816(6)(D) and (F)

Defendant further argues that Plaintiff does not have standing to bring the CUIPA through CUTPA Claims because Plaintiff and Plaintiff's doctors are not parties to the particular insurance contracts at issue, which are between the patients and Defendant.  ECF No. 27-1 at 19.  Initially, the Court notes that while Defendant titles its motion as one to dismiss for lack of standing, it is more appropriately cast as failure to state a claim.  To have standing to bring a cause of action in federal court, a plaintiff must allege that he has "suffered an injury in fact" that is "fairly traceable to the challenged action of the defendant," and that the "injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).  In this case, Defendant has not argued that Plaintiff has failed to establish standing under *Lujan*, and it is clear that Plaintiff's

17

allegations satisfy the *Lujan* factors.  Whether a plaintiff who is not a party to an insurance contract has "state law standing" such that he may maintain an action under CUIPA/CUTPA, however, is a question the Court examines below.  *Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-CV-1600 (MPS), 2017 WL 1190363, at *4 n.7 (D. Conn. Mar. 30, 2017) (examining "state law standing" question as a merits-based inquiry under Fed. R. Civ. P. 12(b)(6)).

Defendant's contention under its "standing" argument is that a plaintiff who is not a party to the underlying insurance contract at issue in a dispute cannot bring a CUIPA/CUTPA action against an insurer without subrogation or a prior finding of the insured's liability.  ECF No. 27-1 at 19 (citing *Carford v. Empire Fire and Marine Ins. Co.*, 891 A.2d 55, 60-62 (Conn. App. 2006)). In *Carford*, automobile accident victims sought to sue the insurer of the driver who injured them for committing allegedly unfair insurance practices, before obtaining a judgment against the driver himself.  *Id.* at 56-57.  The *Carford* court held that the right to assert a private cause of action against an insurer for CUIPA violations through CUTPA does not extend to third parties like the accident victims at issue "absent subrogation or a judicial determination of the insured's liability." *Id.* at 62.  But that holding is too narrow, and the facts of *Carford* too dissimilar, to address the situation at issue here.

Rather, "CUTPA, like other statutory and common-law claims, is subject to the remoteness doctrine as a limitation on standing."  *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 134 (Conn. 2001).  Thus, where "the injuries claimed by the plaintiff are remote, indirect, or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so."  *Id.* at 120.  For example, when "the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct

but are indirect, and the plaintiff has no standing to assert them." *Id.* The Court must thus determine whether the injuries at issue in the present case are direct or indirect.

Determining the answer to this question requires the Court to parse the language of the individual CUIPA through CUTPA Claims at issue. First, the wrongs contemplated by Conn. Gen. Stat. §§ 38a-816(A), (B), (C), and (G) all expressly require that the actions be related to specific "insurance policies" or "insurance policy provisions," or refer to the "insured" having to take particular actions. Similarly, Conn. Gen. Stat. § 38a-816(15) requires that the insurer failed to pay a health care provider "pursuant to an insurance policy." Finally, to state a claim under Conn. Gen. Stat. § 38a-816(23),[5] the plaintiff must allege that the defendant violated any of three statutes addressing different ways an insured can contest an adverse determination of benefits. *See* Conn. Gen. Stat. §§ 38a-591d–38a-591f. As Plaintiff has not contended that it was the holder of any insurance policies or was otherwise injured by Defendant's refusal to abide by the terms of such policies between Defendant and its insureds, any injuries under the CUIPA provisions discussed in this paragraph would necessarily be derivative of injuries to the policy holders. Thus, Plaintiff cannot maintain suit under these provisions and its claims brought pursuant to them must be dismissed.

The remaining sections at issue, however, contain no such language. *See* Conn. Gen. Stat. §§ 38a-816(6)(D) and (F). Rather, the statute simply lays out actions that an insurer is prohibited from taking—refusing to pay claims without conducting a reasonable investigation, and not

---

[5] In the SAC, Plaintiff claims that Defendant violated Conn. Gen. Stat. § 38a-816(23) by imposing a "'coinsurance, copayment, deductible or other out-of-pocket expense' beyond what is allowed by statute." ECF No. 45 ¶ 59. Neither § 38-816(23) nor the statutes it references, §§ 38a-591d through 38a-591f, contain the language Plaintiff cites concerning the imposition of a "'coinsurance, copayment, deductible or other out-of-pocket expense' beyond what is allowed by statute." It is therefore unclear to the Court how Plaintiff claims Defendant violated § 38a-816(23). Even if the imposition of an excessive coinsurance, copayment, deductible or other out-of-pocket expense were actionable under § 38a-816(23), though, Plaintiff cannot state a claim under such a theory as neither it nor its doctors were charged in amounts beyond what is purportedly allowed by statute.

attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. *See id.* The fact that the Legislature specifically included language limiting the sections discussed above to claims related to insureds and insurance policies, while not including such language in §§ 38a-816(6)(D) and (F), is strong evidence that §§ 38a-816(6)(D) and (F) contain no such limitations. *See Town of Ledyard v. WMS Gaming, Inc.*, 258 A.3d 1268, 1275 (Conn. 2021) (recognizing the "well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so"). Here, the complaint alleges facts that, assumed as true, show Defendant "refused to pay claims without conducting a reasonable investigation based upon all available information" and that it has "not attempt[ed] in good faith to effectuate prompt fair and equitable settlements of claims in which liability has become reasonably clear." ECF No. 45 ¶¶ 31–36; Conn. Gen. Stat. §§ 38a-816(6)(D) and (F). Moreover, it is not the insured who has suffered injuries from these actions. Rather, it is specifically the Plaintiff, as it is the one that has not been fully compensated for the services its employees performed. Thus, the allegations under these sections are not third-party claims but direct claims arising under CUIPA and pursued via CUTPA.

Therefore, Plaintiff states a CUTPA claim based on the Surprise Billing Law and the following sections of CUIPA: Conn. Gen. Stat. §§ 38a-816(6)(D) and (F). Conversely, Plaintiff's claims under Conn. Gen. Stat. §§ 38a-816(6)(A),(B),(C), (G), 38a-816(15), and 38a-816(23) are DISMISSED for failure to state a claim upon which relief can be granted.

### C.  Plaintiff's Claims Are Not Preempted by ERISA

Defendant next contends that all of Plaintiff's claims are preempted by ERISA in that they "relate" to plans governed by ERISA. Specifically, Defendant contends that where "the terms of a benefit plan are 'an essential part' of the claim and liability would exist only because of the

administration of an ERISA related benefit," the claims are preempted.  ECF No. 27-1 at 17

(quoting *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.,* No. 19-cv- 7972, 202 WL

4895675 at *5 (S.D.N.Y. Aug 19, 2020)).  Defendant argues that without the plans there would be

no causes of action; therefore, Defendant contends, the claims are inextricably tied to the plans

and are preempted.  Defendant's interpretation of ERISA is mistaken.

ERISA's express preemption provision states that "except as provided in subsection (b) of

this section, the provisions of this subchapter and subchapter III shall supersede any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C §

1144(a).   In  determining  whether  a  state  law  is  preempted,  the  Second  Circuit  looks  to

congressional intent, beginning "with the presumption that Congress does not intend to supplant

state law."  *Stevenson v. Bank of N.Y. Co*., 609 F.3d 56, 59 (2d Cir. 2010) (internal quotations

omitted).  The Second Circuit is also reluctant to find a statute preempted by ERISA where the

state  law  does  not  involve  "relationships  among  the  core  ERISA  entities:  beneficiaries,

participants, administrators, employers, trustees and other fiduciaries."  *Id.* (internal quotations

omitted).  However, where a state law tends to control or supersede "central ERISA functions,"

such as benefit eligibility determination or amounts of benefits, the state law has typically been

held preempted. *Id.*

The U.S. Supreme Court recently confronted the issue of ERISA preemption in a context

not unlike the present case.  In *Rutledge v. Pharmaceutical Care Management Ass'n,* 141 S. Ct.

474, 478–79 (2020), the Court examined an Arkansas law that required insurers to reimburse

pharmacies at a rate that was equal or greater to what it cost the pharmacies to acquire the

medications they were disbursing.  Specifically, the Court considered whether the law was

preempted by ERISA given that it would possibly require ERISA plans to pay higher rates to the

pharmacy than they would otherwise pay. *Id.* The Supreme Court held that such a law is not preempted by ERISA. Specifically, the Court held that "not every state law that affects an ERISA plan" is preempted. *Id.* at 480. Instead, ERISA is "primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits." *Id.* ERISA is especially unlikely to preempt a law where the "law merely affects costs." *Id.* Further, the statute at issue in that case was "neutral toward ERISA plans" in that the law applied to both ERISA and non-ERISA plans. *Id.* This, too, counseled against preemption.

Further insight into this question can be found from our fellow district courts. In recent years, statutes similar to Connecticut's Surprise Billing Law have begun working their way through the federal court system. Thus, several district courts have recently confronted the question of whether a surprise billing law similar to the one in this case is preempted by ERISA. While not controlling on this Court, these decisions are instructive. Every court confronted with this question has determined that ERISA does not preempt a law requiring insurers to reimburse emergency room physicians at a specific, possibly greater, rate. *See Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.,* No. 20-CV-9183 (AJN), 2021 WL 4437166, at *8 (S.D.N.Y. Sept. 28, 2021); *ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.,* 514 F. Supp. 3d 927, 941 (S.D. Tex. 2021); *Emergency Servs. of Oklahoma, PC v. Aetna Health, Inc.,* No. CIV-17-600-J, 2021 WL 3914255, at *3 (W.D. Okla. Aug. 24, 2021).

This Court, like its sister courts, holds that this action is not preempted by ERISA. Initially, Plaintiff's claims "do not derive from the particular rights and obligations established by any benefit plan," nor do they "interfere[] with the relationships among core ERISA entities" or attempt to "control or supersede their functions." *Stevenson*, 609 F.3d at 60. Importantly, the Surprise

Billing Law applies equally to all insurance plans, not only plans governed by ERISA.  As it does not act "immediately and exclusively" on ERISA plans, it is less likely to be preempted by ERISA. *Rutledge*, 141 S. Ct. at 481.  Instead, at most, the Surprise Billing Law slightly increases costs for ERISA plans.  Unfortunately for Defendant, statutes that "merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage" are not preempted.  *Id.* at 480.  For these reasons, ERISA does not preempt Connecticut's Surprise Billing Law, nor Plaintiff's claims in the present action.

### D.   Declaratory Judgment

Defendant argues that because none of Plaintiff's claims remain, the Court is left with no active dispute between the parties and thus must dismiss the declaratory judgment cause of action. For the reasons discussed above, several of Plaintiff's claims in the present action will continue. It is thus clear that there is an "actual controversy" within the Court's jurisdiction such that it "may declare the rights and other legal relations" of the interested parties.  28 U.S.C. § 2201.  Thus, the Court will not dismiss Plaintiff's claim for declaratory judgment.

### IV.    CONCLUSION

For the reasons discussed herein, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.   Count One, insofar as it alleges claims under Conn. Gen. Stat. §§ 38a-816(6)(A), (B), (C), (G), 38a-816(15) and 38a-816(23), is DISMISSED.  Count One, insofar as it alleges claims under the Surprise Billing Law and Conn. Gen. Stat. §§ 38a-816(D) and (F), shall proceed.  Count Two, alleging a violation of the Surprise Billing Law, is DISMISSED.  Count

Three, for declaratory judgment, shall proceed.

**SO ORDERED** at Hartford, Connecticut, this 20th day of July, 2022.

 _/s/ Sarala V. Nagala_____
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE